FILED

2012 Aug-16  AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT A. DAVIS, et al., | ) | |
| Plaintiffs; | ) | |
| | ) | |
| vs. | ) | 7:10-cv-02851-LSC |
| | ) | |
| BELLSOUTH | ) | |
| TELECOMMUNICATIONS, | ) | |
| INC. d/b/a AT&T ALABAMA, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OF OPINION

### I.    Introduction

Before this Court is the Motion for Summary Judgment[1] (Doc. 40) filed by

Defendant BellSouth Telecommunications, Inc. ("BellSouth"), BellSouth's Motion

to Exclude the Expert Testimony of Plaintiffs' expert Donald R. Johnson (Doc. 37),

and BellSouth's Motion in Limine (Doc. 55).[2]  The motions have been briefed and are

---

[1] BellSouth simultaneously filed a Motion for Summary Judgment (Doc. 41) on the claims of the intervenor, Canal Insurance Company ("Canal").  Since Canal's claims are wholly dependent upon the success of the claims Plaintiffs make against BellSouth, for the same reasons as those stated herein, summary judgment is also granted in favor of BellSouth as to those claims as well.  Canal's request to "dismiss" BellSouth's Motion for Summary Judgment entitled as Intervenor Canal Insurance Company's Response to BellSouth's Motion for Summary Judgment (Doc. 49) is Denied.

[2] There is also pending Plaintiffs' Motion to Strike (Doc. 50) and BellSouth's Motion in Limine (Doc. 56) however, since this Court did not consider the evidence referred to in either motion, there is no need for them to be addressed.

now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, the Motion to Exclude will be granted and the Motion for Summary Judgment will also be granted.

II.     Facts[3]

Robert A. Davis ("Davis") was driving a tractor-trailer when he struck telephone cables that were hanging low over the road upon which he was traveling. After striking the cables, he lost control of his truck and overturned off a bridge. Davis suffered personal injury and property damage while the other Plaintiffs, who owned an interest in the vehicle and freight, suffered property damage.

It is undisputed that a tree that was more than one hundred feet in height, fell on the phone cables, causing them to hang below their normal clearance height. The tree that fell was located roughly fifty feet from the cables and it fell on a span of the cables that was not adjacent to the road crossing span. The condition of the tree before it fell and the cause of the tree falling are both in dispute. Plaintiffs sued BellSouth in

---

[3] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).

state court for negligence on September 13, 2010 and BellSouth removed the case to federal court on October 21, 2010.

In Plaintiffs' Rule 26 Expert Witness Report, Plaintiffs disclosed one expert, Donald R. Johnson ("Johnson"), a licensed electrical engineer with more than thirty years of experience in the field of electric utility systems including design, implementation, and National Electronic Safety Code ("NESC") Compliance. Johnson was apparently intended by Plaintiffs to establish the duty of care and to prove the breach of that duty by BellSouth. Johnson offered the following opinions in his Rule 26 report:

> 1)   [A] large tree next to a creek fell across the overhead telecommunications cable causing the cable to drop low across the highway and bridge at some time prior to the semi-rig making contact with the low hanging cable. This contact caused the semi-rig to lose control resulting in the accident.[4]
>
> 2)   BellSouth Telecommunications is obligated to comply with [NESC regulations].
>
> 3)   Table 232-1 of the NESC, Column 2, Row numbered 3, indicates that the absolute minimum clearance for telecommunications cables above roads, streets, and other

---

[4] There is nothing in the record that would support Johnson's qualifications as an accident reconstruction expert or establishing that anyone qualified as an expert made particular investigation into the actual mechanics of the accident under consideration. As such, Johnson's conclusion that "This contact caused the semi-rig to lose control resulting in the accident" will not assist the trier of facts and is therefor excluded.

areas subject to truck traffic shall be 15.5 feet. Based upon the investigation there is no doubt that the clearance was obviously below this minimum clearance requirement.

4)  Section 218A [of the NESC] . . . states specifically [that] "Vegetation that may damage ungrounded supply conductors should be pruned or removed." Even though [this section] delineates underground supply cables . . . the spirit of the requirements [applies to] properly maintaining vegetation around any overhead lines, especially involving trees, whether they are electrical lines, guy wires, telecommunication lines and messengers, cable television cables, etc. . . . . Had [BellSouth] maintained proper vegetation management and properly trimmed or removed the trees . . . the tree would not have fallen through the line . . . .

5)  NESC Section 218B . . . states: " The crossing span and the adjoining span on each side of the crossing should be kept free from overhanging or decayed trees or limbs that otherwise might fall into the line." The intent of this section clearly describes the  dangers of trees in close proximity to the overhead lines and the likelihood that falling trees or limbs across overhead utility lines could cause these overhead lines to hang low across highways resulting in highway accidents . . . .

6)   The design of the overhead telecommunications line crossing at this particular bridge location was poorly designed. Since the telecommunications cable crossing was directly over the bridge, which was immersed in trees on both sides, along with restricted narrow highway width due to the bridge railings, this cable crossing location was a totally inappropriate design. The vast majority of telecommunications cables are underground.  In this particular case the best highway crossing design should have

been an underground line either under the highway in a bore
or suspended under the bridge in conduit.

(Doc. 38 at 3-5.).

On February 16, 2012, Johnson was deposed, at which time he confirmed his

Rule 26 disclosed opinions and offered no other opinions that are significant to this

Court's decision.  It was not until BellSouth filed its Motion for Summary Judgment

and Motion to Exclude Johnson's Testimony that Plaintiff submitted an affidavit,

signed by Johnson, where he provided the following additional opinions:

> 7)  It is the custom and practice in the industry for utilities
> to regularly inspect electrical power lines and
> telecommunication cable rights of way and remove trees or
> other that could fall across such lines.
>
> 8)  [T]he tree that allegedly fell was actually growing out of
> a creek bank which made it more susceptible to falling over
> with or without heavy wind. Given the location and design
> of the telecommunication lines in this area it was
> foreseeable that if this tree fell (for any reason) it could fall
> on the lines and interfere with the flow of traffic on
> Highway 17.
>
> 9)  Given the height of the tree, its location, the location of
> the nearby telecommunication lines and the fact that a
> major state highway runs through this area, a reasonable
> inspection by Bellsouth should have revealed the risk of
> harm to the telephone lines and the motoring public if the
> tree fell, regardless of the reason.

(Doc. 52-3 at 2-4.).

III.    Daubert Analysis

A.    Applicable Law

As a preliminary matter, the Court must address BellSouth's Motion to Exclude the Expert Testimony of Johnson as it will possibly be dispositive of BellSouth's Motion for Summary Judgment. While Federal Rules of Evidence 401 and 402 provide for the liberal admission of relevant evidence, Rules 403, 702, and 703 mitigate against this general policy by giving trial courts discretion to exclude expert testimony that is either unreliable or irrelevant. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999).  The Eleventh Circuit Court of Appeals summarized the applicable rules in *City of Tuscaloosa v. Harcross Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), when it wrote that scientific expert testimony may be admissible if " (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *See also, e.g.*, *Allison*, 184 F.3d at 1309; *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court imposed a special duty on trial judges pursuant to Federal Rule of Evidence 702, requiring judges to act as "gate-keepers" to ensure that novel scientific evidence is both reliable and relevant before it is admitted. Later, in *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999), the Supreme Court expanded its *Daubert* ruling to apply to expert testimony in all types of cases. The Supreme Court recognized that judges are not trained scientists and that the task imposed by *Daubert* is difficult in light of their comparative lack of expertise. *Allison*, 184 F.3d at 1310 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 148 (1997) (Breyer, J. concurring)). Nevertheless, the judge's relatively inexpert attention is considered preferable to "dumping a barrage of questionable scientific evidence on a jury." *Id.* While this Court is aware of its duty as a gatekeeper, it understands that its role is "not intended to supplant the adversary system or the role of the jury," *Id.* at 1311, and it recognizes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The primary focus of a *Daubert* inquiry is on the principles and methodology underlying expert opinion testimony, not the conclusions they generate. *Id.* at 595. The trial court must be sure the expert "employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co.*, 526 U.S. at 152. While it is true that experience alone may qualify an expert witness, this does not mean that experience alone is a "sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). "If the witness is relying solely or primarily on experience, then the witness must explain how the experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.). Accordingly, "the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison*, 184 F.3d at 1312; *see also Joiner*, 522 U.S. at 146 ("[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Daubert*, 509 U.S. at 589–90 (Rule 702 requires that the subject of an expert's testimony must be "knowledge," which connotes more than a subjective belief or unsupported speculation).

*Daubert* also requires a special inquiry into relevance, calling on the trial court to ensure that expert testimony " logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand). There must be a valid scientific connection between the testimony and the disputed facts in the case. *Id.* Furthermore, when expert opinion is based on otherwise inadmissible hearsay, Rule 703 requires the trial court to ensure that the underlying facts or data upon which the expert bases his opinion or inference are of the type reasonably relied upon by experts in the particular field.

The testimony must assist the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical, or specialized expertise. *City of Tuscaloosa*, 158 F.3d at 562. The expert must contribute specialized knowledge not within the general understanding of the jury nor anything the lawyers could argue to the jury themselves. *Cook ex. rel Estate of Tressier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005). Furthermore, the burden is on the plaintiffs to affirmatively establish that their expert has suitable qualifications. *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

B.     Opinions in Rule 26 Disclosure

1.     NESC Violations

In arriving at his second, third, and fourth opinions, Johnson relies upon the NESC to support his conclusions.[5] When an expert's conclusions are based upon regulations, those regulations  must be applicable to the facts at hand.  Otherwise, when the violation of the regulation is the sole basis for the expert opinion, it will not assist the trier of fact. *See*, *e.g.*, *Roy v. Florida Marine Transporters, Inc.*, 2004 U.S. Dist. LEXIS 4390, at *10 (E.D. La. Mar. 18, 2004). In *Roy*, the expert's testimony was excluded because he relied on an OSHA regulation despite the fact that the regulation did not require surfaces to have non-skid material which was contrary to the expert's opinion.

Johnson's third opinion, in contrast, is supported by the NESC section he cites because this section adequately applies to the facts at hand.[6]  This is not the case, however, for his fourth and fifth opinions. Section 218A of the NESC provides that "[v]egetation that may damage ungrounded supply conductors should be pruned or

---

[5] Johnson's first opinion, to the extent not already excluded, *see supra* p. 3 n.4, appears to be undisputed by the parties. The undisputed aspects of this opinion are not excluded. Johnson's second opinion also does not appear to be in dispute and is not excluded.

[6] Johnson cites NESC Table 232-1, Column 2, Row 3, which indicates that the absolute minimum clearance for telecommunications cables above roads, streets, and other areas subject to truck traffic is 15.5 feet. While the plain language of this regulation applies to the facts of this case, his conclusion that there was a violation is supported only to the extent he concludes 1) the minimum height permitted by the regulation was 15.5 feet and 2) the cable was lower than the height permitted by the regulation at the point of the accident. The remainder of Johnson's third opinion is excluded as not properly the subject of his expert testimony.

removed." Section 218B states " the crossing span and the adjoining span on each side of the crossing should be kept free from the overhanging or decayed trees or limbs that otherwise might fall into the line."   Johnson opines that BellSouth violated both of these sections. However, Johnson admits that 218A applies to ungrounded supply cables.  He just, without additional explanation, expands the regulation by stating that the " spirit of the requirements" applies equally to " properly maintaining vegetation around any overhead lines, especially involving trees, whether they are electric lines, guy wires, telecommunication lines and messengers, cable television cables, etc." (Doc. 38 at 4.) This opinion is not based on any type of scientific data or method. Instead, Johnson bases his opinion on his thirty plus years of experience in the electrical utility industry and the documents reviewed which include the accident report, photos and video from the scene.

As previously explained, when an expert is " relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F .3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.).  Johnson offers no support for his " spirit of the requirement" statement. As such, his fourth opinion will not assist the trier of facts and is therefor excluded.

In his fifth opinion, Johnson states that the "intent of 218B...clearly describes the dangers of trees in close proximity to overhead lines" but offers no support for why the regulation should not be taken for its plain language which applies only to "the crossing span and each side of the crossing span." The tree fell on cables that were not either the "crossing span [or on the] side of the crossing span." Johnson, offers no explanation of how he jumped to the conclusion that the regulation nevertheless applied. Further Johnson offers no explanation of what he means by "in close proximity" or how that is measured. Finally, the regulation talks of "overhanging or decayed trees" but there is no evidence that the tree in question was overhanging or decayed. Without further support, Johnson's fifth opinion is the result of *ipse dixit*. It will not assist the trier of facts and is therefor excluded.

2.    Opinion That The Overhead Lines Were Poorly Designed

In his sixth opinion, Mr. Johnson concluded that the telecommunications line crossing at this particular location was poorly designed and that the cables should have been underground or suspended under the bridge in a conduit. (Doc. 39-1 at 5.) He reasons that the cables are along a restricted narrow highway immersed with trees on both sides and that the vast majority of telecommunication lines across the nation are underground. (*Id.*) Not only does Johnson fail to support his conclusion, again, with specific data, regulations, reasoning, or explanation involving his experience and

knowledge, but his deposition testimony even contradicts his own opinion. For instance, he admits that he designed overhead crossings and fails to offer any explanation as to how and why this crossing is different. (Doc. 39 at 6.) He states that "the vast majority of telecommunication cables across the nation are underground." (Doc. 39-1 at 5.) However, in his deposition when asked if this is true for rural telecommunication cables in Alabama, he admitted: "I don't know Alabama. I'm speaking from experience in the western states." (Doc. 39 at 8.) When asked if that were true in any rural location in 1954 (the date of design of this crossing) Johnson said he did not know. *Id.*

Johnson includes in his sixth opinion the conclusion that "the best highway crossing design should have been an underground line either under the highway in a bore or suspended under the bridge in conduit." (Doc. 39-1 at 5.) But failure to employ the "best" design is not the proper test in a negligence cause of action. The "best" solution might be underground utilities everywhere so that no storm could blow trees into lines and then into streets, but that is not the issue. What is relevant is the duty BellSouth owed and whether that duty was breached. Johnson provided no explanation of how the "best" was the proper measure of the "duty of care" owed by BellSouth. Thus, Johnson's opinion that the crossing was poorly designed will not assist the trier of facts and will therefor be excluded.

C.    Opinions Included in Affidavit

Rule 26 of the Federal Rules of Civil Procedure requires that each side make certain disclosures including a complete statement of each opinion that each expert will express.  The purpose of this Rule is to facilitate a fair and orderly process of discovery enabling each side to prepare either its prosecution or defense of claims. When Johnson withheld his seventh, eighth, and ninth opinions, he put BellSouth at a disadvantage.  Johnson's deposition was taken by BellSouth on February 16, 2012, one day before the repeatedly extended discovery cutoff date.  His additional opinions were not disclosed until late March of 2012.  Thus, BellSouth had no opportunity to cross examine him concerning those additional opinions.  Because of Plaintiff's failure to timely disclose those opinions, Johnson's seventh, eighth, and ninth opinions are due to be and will be struck.  Regardless this Court will discuss how it would otherwise rule on the admissibility of those opinions.

1.    Johnson Claims Bellsouth Violated Industry Standard for Vegetation Management

In his seventh opinion, Mr. Johnson opines that he is familiar with the general standard of care that applies to vegetation management and that it is the custom and practice in the industry to remove any trees from the right of way that could fall across cable lines. (Doc. 52-3 at 2.) There are two issues to address: 1) whether Johnson is qualified to testify on this matter and 2) whether his testimony is reliable. Even if

Johnson is qualified, his testimony must be reliable. *U.S. v. Frazier*, 387 F. 3d 1244, 1261 (11th Cir. 2004).

In *Frazier*, testimony was excluded because the expert claimed to base his opinion on experience and various scientific textbooks but failed to explain how his experience and the information in the scientific textbookss supported his opinion. *Id.* at 1265. In addition, he only identified one investigation he participated in with a similar issue. *Id.* Evidence of industry norms must be specific enough to make a rigorous comparison between these circumstances and the relevant industry. *In re Globe Manufacturing Corp.*, 567 F. 3d 1291, 1299-1300 (11th Cir. 2009). A court cannot evaluate the reliability of an expert's methodology unless he has actually employed one. *McGee v. Evenflo*, 2003 U.S. Dist. LEXIS 25039, at *18 (M.D. Ga. Dec. 11, 2003) In *McGee*, the expert ambiguously explained that his opinions were based on review of the evidence and general experience in the field, however, the expert failed to show that the methodology employed basic Daubert factors or that the methods were consistent with other experts in the field. *Id.* at *18-9.  Without specific facts, standards, or methods, it is impossible to objectively test an opinion for reliability. *See Cochran v. Brinkmann*, No. 08-cv-1790-WSD, 2009 WL 4823858 at *10 (N.D.G.A. Dec. 9, 2009).

Mr. Johnson has "over thirty three years of industry experience in the design and implementation of electrical utility systems" (Doc. 39-1 at 6) but only in the Western states, not in Alabama. (Doc. 39 at 6.) There is nothing in his testimony, his report, or his affidavit that explains how he is familiar with the industry standards any where other than the Western states. Furthermore, other than conclusory statements, Johnson does not demonstrate any expertise in the design or maintenance of telecommunication cable facilities as opposed to electrical utility systems. Johnson is not qualified to testify on the industry standards that apply to the case at hand. Not only is the Southeast different in terrain, weather, and environmental challenges than the Western states, but telecommunication cable facilities are obviously different from electrical utility systems.  If Mr. Johnson had been able to explain how they were similar or how the differences were not relevant to his opinions it may have been more helpful.  He did not.  This court cannot allow into evidence an expert opinion based on "because-I-said-so" reasoning.

It is also unexplained and doubtful as to how he is qualified to testify on the condition of the tree in order to opine that it "could fall across such lines." Regardless of his lack of qualification, there are clear issues concerning the reliability of Johnson's testimony. Given his lack of qualification and the lack of support and methodology for

his opinion, it is unreliable and simply not helpful to the trier of the facts and must be excluded.

### 2.   Opinion that the Tree Was Susceptible to Falling

In his eighth opinion, Johnson concludes that the tree that fell on the telecommunication lines was growing out of a creek bank and, therefore, susceptible to falling with or without a heavy wind. (Doc. 52-3 at 3.) The court notes that in his first opinion Johnson stated that the tree was "next to a creek." After the motions were filed by BellSouth, he changed it to "growing out of a creek bank." Regardless, Johnson is an electrical engineer who's experience is in the electrical utility industry. There is nothing in the record to indicate that Mr. Johnson is qualified to opine about the soil condition and physical forces at work on the tree in question. His eighth opinion will not assist the trier of the facts and will be excluded.

### 3.   Opinion that a Reasonable Inspection by BellSouth would have Revealed the Risk of Harm.

In his ninth opinion, Johnson concludes that "a reasonable inspection by BellSouth should have revealed the risk of harm to the telephone lines and the motoring public if the tree fell, regardless of the reason." This appears to be an unsupported legal conclusion as to the duty of care. There is nothing in the record to support a conclusion that all trees that could fall "regardless of the reason" would

need to be removed in order to meet the duty of care.  Taken as stated by Johnson,

companies like BellSouth would be under a duty to take down any tree that could,

under any possible scenario, fall and strike a cable that would impede traffic.  This

could even include historic trees not located upon or over the company's right of way.

The ninth opinion is not helpful and is excluded.

III.    Motion For Summary Judgment

A.      Standard Of Review

Summary judgment is proper " if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(a).  A moving party must support his motion for summary

judgment " by citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The party

moving for " summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [particular

parts of materials in the record] which it believes demonstrate the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant

can meet this burden by presenting evidence showing that there is no genuine issue of

material fact, or that the nonmoving party has failed to present evidence in support of an essential element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ..*, 93 F.3d 739, 742 (11th Cir. 1996). Once the moving party has met his burden, the nonmoving party is required " to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. " A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.' " *Info. Sys. and Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

   B.     Negligence and BellSouth's Duty of Care

   Negligence " is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc. v. Brackin*, 356 So. 2d 119 (Ala. 1978)). In order to recover under a negligence claim, a plaintiff bears the burden of proving (1) the existence of a duty

owed by the defendant to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate causation between the defendant's conduct and plaintiff's injury, and (4) damage or injury. *See S.B. v. Saint James Sch.*, 959 So. 2d 72, 97 (Ala. 2006). "[S]ummary judgment is rarely appropriate in negligence actions," because they "almost always present factual issues of causation and of the standard of care that should have been exercised." *Yarborough v. Springhill Memorial Hospital*, 545 So. 2d 32, 34 (Ala. 1989). Nevertheless, the Alabama Supreme Court has found summary judgment to be appropriate in various instances involving negligence claims where the evidence is clearly in favor of the movant. See, e.g., *Hines v. Hardy*, 567 So. 2d 1283, 1285 (Ala. 1990); *Duffy v. Bel Air Corp.*, 481 So. 2d 872, 874-75 (Ala. 1985); *Bennett v. Cole*, 426 So. 2d 829, 831 (Ala. Civ. App. 1981), aff'd *Ex parte Bennett*, 426 So. 2d 832 (Ala. 1982); *Shaw v. City of Lipscomb*, 380 So. 2d 812, 815 (Ala. 1980).

While utilities have the right to erect poles and wire lines across and along public roadways, it has long been established that such a right does not excuse the utility from the duty to exercise "ordinary care to prevent injury to others rightfully using the highway." *Alabama Power Co. v. Jackson*, 131 So. 244, 245 (Ala. App. 1930).

Because most of Johnson's testimony is excluded, the court must look at the remaining evidence in the record to determine if there are any genuine issues of material fact. The only relevant evidence the Plaintiffs offer that is not based upon

Johnson's excluded testimony is proffered to show that poor vegetation management took place. This evidence consists of some testimony as well as photographs of the Highway 17 area showing telecommunication lines passing through trees and vines. (Doc. 51 at 9-10.) This, of course, is evidence concerning the scene after the tree had fallen and the vehicle had wrecked. While this may or may not lead to the conclusion that BellSouth failed to practice good vegetation management, it does not answer the question of whether, in the exercise of the applicable duty of care, the particular tree in question would have been noticed and removed. The other vegetation was not the cause of the Plaintiffs' injuries.   According to Plaintiffs, it was a large tree (approximately 100 feet tall) 45-50 feet from the telecommunication lines located four spans from the road.  No competent evidence is before the court as to how that tree appeared before the accident.  In other words, there is nothing to show that the tree was leaning, rotten, dead, in danger of falling, or even hanging over the telecommunication lines.

" [I]n order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff." *Lowe's Home Centers, Inc. V. Laxson*, 655 So. 2d 943, 945-46 (Ala. 1994). In a case concerning the alleged negligence of a power company failing to remove a tree that fell on an electrical wire causing

electrocution of the plaintiff's mule, the court said that, in the absence of an applicable statutory duty, the duty owed by the power company was a common law negligence duty of care. *Alabama Power Co. v. Matthews*, 147 So. 889, 890 (Ala. 1933). The court specified that the inquiry is:

> Would a man of reasonable care, charged with the duty to discover and remedy conditions of potential danger, and possessing the knowledge required for the conduct of this line of business, see and consider the presence of this dead tree in proximity to the transmission line a "danger tree," which would involve substantial danger of electrocuting some person or animal rightfully at such place.

*Id.* at 890. Despite the difference in the resulting type of injury, the duty expressed in *Matthews* is applicable to BellSouth. In their brief, Plaintiffs' refer this Court to numerous cases addressing the duty of utility companies that have cables across public highways. (Doc. 51 at 12-24.) However, none of the case law cited supports a duty to remove trees like the offending tree in this case. On the contrary, case law supports the conclusion that BellSouth is not under a duty to clear any trees that could fall across the cable lines. "It cannot be said there is a present duty to cut every *dead* tree standing near enough to the line for its branches to come in contact with the line in falling." *Matthews*, 147 So. at 891 (emphasis added). Elements to be considered when assessing whether there is a duty to remedy conditions of potential danger in the form of *dead* trees in proximity to a transmission line include "the condition of the tree as it

appeared standing, the likelihood of its falling at the time; then the probability of its coming in contact with the line in falling." *Id.*

" 'In determining whether a duty exists in a given situation . . . courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant.' " *DiBiasi v. Joe Wheeler Elec. Membership Corp.,* 988 So. 2d 454, 461 (Ala. 2008) (quoting *Patrick v. Union State Bank*, 681 So. 2d 1364, 1368 (Ala. 1996) (quoting *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)). "Where there is no duty, there can be no negligence." *City of Bessemer v. Brantley* , 65 So. 2d 160, 165 (Ala. 1953). Furthermore, "the existence of a duty is strictly a legal question." *DiBiasi*, 988 So. 2d at 460. While this Court would certainly present any genuine issue as to any material fact to a jury for determination, it is likewise obligated to render a summary decision when there is no such genuine issue.

There is no evidence to support the conclusion that the tree in question appeared – prior to its fall – to have been dead, leaning, or in any other way a threat to fall. If there is no duty to remove every dead tree whose branches may come into contact with the line in falling, there would certainly be no duty to remove every such tree that was alive. Alabama case law weighs heavily against any claim by the Plaintiffs that BellSouth had a duty to remove the offending tree. There is nothing to support

the conclusion that it was reasonably foreseeable that the tree would fall, would cause the cables to lower in falling, and thus would result in danger to travelers of the public road.  As such, there is nothing to indicate that BellSouth failed to exercise ordinary care to prevent injury to others rightfully using the highway and, more particularly in this case, that such breach proximately caused the injury.  In other words, even if Plaintiffs have demonstrated some evidence of a breach of the duty to exercise ordinary care in inspecting the vegetation along the telecommunication cables, there has been nothing presented showing that one could conclude that the large tree in question would have been removed in the proper exercise of ordinary care.  The tree fell and unfortunately hit the cables causing them to fall into the road.  It may have been foreseeable that if this large tree fell it could cause the cables to fall into the road, but it was not reasonably foreseeable that this particular tree would fall.  Furthermore, there is no duty to cut down every tree that could contact a telephone cable if it were to fall.  The test is reasonable foreseeability that such tree would fall, not mere possibility that it could fall.  Therefore, summary judgment is due to be granted.

IV.   Conclusion

For the reasons stated above, the delineated expert testimony of Donald Johnson is due to be excluded. Furthermore, no genuine issues of material fact are present regarding the negligence claim against Defendant BellSouth.  BellSouth's

Motion for Summary Judgment is due to be granted. A separate order consistent with this opinion will be entered.

Done this 16th day of August 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032